OPINION OF THE COURT
Harold Baer, Jr., J.
Defendants move, pursuant to CPLR 3212, for summary judgment. Plaintiff cross-moves for partial summary judgment against defendants Schiller and Irving Moskovitz on the question of liability on the fourth cause of action.
*482 This case arises out of the dissolution of a law partnership, known as Graubard, Moskovitz, Dannett, Horowitz & Mollen (hereinafter the Firm). The complaint alleges that by 1982, the senior partners of the Firm, defendant Moskovitz and three others, were looking toward their retirement and wished both to establish a retirement program for themselves and to ensure the continued future success of the Firm. In April 1982, the partners approved a retirement program (hereinafter the Retirement Agreements) that provided for a "phase-down” of the senior partners, the return of their capital during the "phase-down”, and the payment of retirement benefits during a subsequent five-year period. Moskovitz allegedly represented that he and his fellow senior partners would "do all they could to ensure * * * the institutionalization of [the Firm’s] clients, particularly certain of its key clients, including [F. Hoffman-LaRoche & Co. Ltd. and related companies (hereinafter collectively referred to as HLR)].”
Moskovitz thereafter received benefits pursuant to the program. Plaintiff asserts, however, that Moskovitz took no reasonable steps to "institutionalize” the HLR account. In May 1988, Moskovitz, then of counsel and in the second year of the five-year retirement period, and the other defendants left the Firm and joined LeBoeuf, Lamb, Leiby & MacRae. Plaintiff alleges that prior to departing, Moskovitz, with the assistance of the other defendants, solicited HLR and other clients to transfer their business to defendants’ new firm, which transfer in fact occurred, at least in the case of the important HLR clients.
In addition to a claim for fraud, the complaint contains causes of action for conversion, breach of contract, breach of fiduciary duty and other wrongs. Defendants contend that plaintiffs case cannot stand because the purported agreement being sued upon is unenforceable as a matter of professional ethics.
Plaintiffs primary basis for its claim founded upon the Retirement Agreements in that the Agreements were breached by the failure to make efforts to "institutionalize” the clients and by the solicitation thereof. Plaintiff, however, also appears to be arguing that Moskovitz breached the Agreements by the simple act of leaving plaintiff to practice elsewhere during the period in which he was entitled to retirement benefits.
Plaintiff argues that DR 2-108, a principal piece of defen *483 dants’ artillery, does not apply here. The rule, which outlaws agreements among counsel that restrict an attorney’s right to practice law, refers to a "partnership or employment agreement.” There was no written partnership agreement for the Firm and the aim of the Retirement Agreements was not, strictly speaking, to provide employment. Nevertheless, this language should not be a bar to the application of this rule to a retirement agreement that places restraints upon the future professional activity of a partner once he retires. For the purpose of the rule, the Agreements may be considered a modification of an oral partnership arrangement.
Plaintiff also argues that the rule is inapplicable because the Agreements do not restrict an attorney’s right to practice "after the termination of a relationship created by the agreement” (DR 2-108 [A]). Plaintiff, though, insofar as its primary claim is concerned, is not relying upon a restriction upon Moskovitz’s right to practice law, in marked contrast with, for example, Cohen v Lord, Day & Lord (75 NY2d 95 [1989]) and Matter of Silverberg (Schwartz) (75 AD2d 817 [2d Dept 1980], appeal dismissed 53 NY2d 704 [1981]). Rather, the heart of plaintiff’s theory is founded upon Moskovitz’s affirmative undertaking to try to "institutionalize” the clients (and, implicitly, not to solicit them) while in practice at plaintiff. Furthermore, Moskovitz, though not required to do so in return for retirement benefits, was still working for the Firm (in an of counsel role) when he committed the principal wrongs alleged. In this capacity, he owed a duty not to compete with the Firm at the same time or to solicit Firm clients. The Agreements did not restrict his right to practice law while he acted as of counsel since his fiduciary obligations would have imposed undivided loyalty on him in any event. The target of DR 2-108 is an agreement that restricts an attorney’s right to practice law in competition with his former firm after he leaves practice with that firm.
The situation is somewhat different, however, with regard to plaintiff’s second theory, which is that, having accepted retirement benefits, Moskovitz was barred from leaving plaintiff to do anything other than spend his time in a hammock.
Plaintiff argues that the restraint it defends is legitimate because the Agreements are within the retirement benefits exception to the disciplinary rule. In contrast with Cohen v Lord, Day & Lord (supra), the Agreements here clearly concerned retirement. This was denominated a "Phasing Out and Retirement Program”, and unlike the partnership agreement *484 in Cohen, the Agreements did not contain separate retirement and withdrawal provisions. The undisputed origin of the Agreements was the concern of the aging partners about their retirement and about the Firm’s future. The Agreements provided for a "phase-down” period and a retirement period. The Agreements specifically concerned the situations of four named senior partners of advanced age and all other partners beginning with age 67. Although it is true that the benefits in question were to be temporally limited (compare, Cohen v Lord, Day & Lord, 75 NY2d, at 100), that factor alone should not be determinative. This was without doubt a retirement program.
What restrictions upon a retiring partner’s right to practice law do the Agreements attempt to impose? A partner in retired status may work but is not obliged to do so. During the five-year period in which he receives retirement benefits, he is obligated to offer any new business that comes his way to the Firm in the first instance. In addition, "[i]t is the spirit of the program that during retirement, and even afterward, each of the retirees will not do anything to impair the firm’s relationship with its existing clients and business.” Plaintiff seems to argue from these provisions that Moskovitz either was free to practice with plaintiff or obliged to forgo practice altogether. DR 2-108 in permitting restrictive covenants "as a condition to payment of retirement benefits” is somewhat obscure. Professor Hazard, writing about the comparable ABA Model Rules of Professional Responsibility rule 5.6 (a), remarks that the "purpose and meaning of the last clause * * * is not crystal clear. It appears to mean that when a lawyer is retiring and winding up his affairs with a firm, he may be required to agree to 'stay retired’ as a condition of the settlement.” (1 Hazard & Hodes, Lawyering, at 486 [1989]; see, Cohen v Lord, Day & Lord, supra, 75 NY2d, at 106, n 2 [Hancock, Jr., J., dissenting].) But, as Professor Hazard puts it, a permanent ban "appears to contradict the spirit (if not the letter) of the rest of the Rule, for it would prevent a lawyer from having a change of plans and making himself available to clients again.” (1 Hazard & Hodes, op. cit, at 486.) The Retirement Agreements do not, however, impose such a permanent and absolute ban.
The clauses in the Agreements referred to above achieve the following results. During the five-year retirement benefits period, the attorney may practice for the Firm or go elsewhere but subject to two significant constraints: (a) he must offer all *485 client opportunities to the Firm in the first instance, and (b) he must not "do anything to impair the firm’s relationship with its existing clients.” As I interpret it, the latter clause means that the attorney may not represent any person or entity that was a client of the Firm at the date of the lawyer’s entry into a different practice. After the five-year benefits period, the Agreements require that the attorney continue not to represent any of these Firm clients. In this case, the lawyer in retirement status left while benefits were still payable but undertook to represent "existing clients” of the Firm. Does his abandonment of any claim to retirement benefits mean that he may properly resume his occupation, as defendants contend?
I conclude that the answer is yes. This would seem to contradict Professor Hazard and Judge Hancock’s reading of the clause. However, DR 2-108 permits a restriction upon the right to practice that would otherwise be prohibited (typically, a ban on practice in the same field or geographic area or in representation of clients of the old firm [see, Matter of Silverberg (Schwartz), supra, 75 AD2d, at 818-819; Matter of Silagi (Guazzo, Perelson, Rushfield & Guazzo), 146 AD2d 555 (1st Dept 1989); Illinois Ethics Opn No. 86-16 (May 13, 1987); DC Ethics Opn No. 181]) "as a condition to payment of retirement benefits.” The word "condition” suggests that the restriction is linked to the benefits; therefore, if the partner abandons his right to these benefits, the- restriction ceases to be proper. (See, Cohen v Lord, Day & Lord, supra, 75 NY2d, at 112 [Wachtler, Ch. J., dissenting].)
A more important consideration is the purpose behind DR 2-108. Restrictive covenants are limited in the case of attorneys in order to serve the greater social purpose of providing clients with full and free choice of counsel. The retirement benefits exception therefore ought to be narrowly read. A firm may, for instance, require an attorney not to represent its clients or not to practice law at all while receiving retirement benefits, but if the attorney decides to forgo those benefits, then he may practice and clients may freely avail themselves of his services.
Since Moskovitz gave up any claim to the remaining three years of retirement benefits, he was free to take himself off to whatever greener pastures he thought he had found and there to practice freely unless limited by constraint on solicitation.
Plaintiff’s cross motion seeks summary judgment on its *486 claim that defendants Moskovitz and Schiller breached their fiduciary duties to plaintiff by soliciting clients of the Firm to join them at the new firm. The "solicitation of a [law] firm’s clients by one partner for his own benefit, prior to any decision to dissolve the partnership, is a breach of the fiduciary obligation owed to each other and the partnership, and a breach of the partnership agreement in general” (Matter of Silverberg [Schwartz], 81 AD2d 640, 641 [2d Dept 1981]; see generally, Hillman, Law Firms and Their Partners: The Law and Ethics of Grabbing and Leaving, 67 Tex L Rev 1 [1988]). Once the partner has left, however, he is free to work for any clients of the former firm that decide to take their business to him.
It is not, though, self-evident what actions constitute improper solicitation. (See, e.g., ABA Informal Opns Nos. 1457 [1980], 1466 [1981], and 910 [1966]; Illinois Ethics Opn No. 86-16 [May 13, 1987]; see, DR 2-102; compare, Adler, Barish, Daniels, Levin & Creskoff v Epstein, 482 Pa 416, 393 A2d 1175 [1978], appeal dismissed and cert denied 442 US 907 [1979], with Meehan v Shaughnessy, 404 Mass 419, 535 NE2d 1255, 1265 [1989].)
In my view, an attorney may decide to leave a firm and keep that decision to himself while he searches for and arranges a new position. This does not amount to unfairness or dishonesty toward other partners. (See, Meehan v Shaughnessy, supra, 535 NE2d, at 1264; Bray v Squires, 702 SW2d 266, 270 [Tex Ct App 1985].) On the other hand, a partner would breach his duty toward his partners if he were to communicate secretly with clients of the partnership and attempt to persuade them to desert the old firm for whatever new one the partner intends to join; to misstate to clients their rights with respect to the choice of their counsel; to misstate the partner’s intentions to his partners when asked; and to abandon the firm after giving brief notice, taking files and previously solicited clients with him. (See, Meehan v Shaughnessy, supra, 535 NE2d, at 1264-1265; see also, 1 Hazard & Hodes, op. cit., at 526.5-526.6.) These boundaries apply to senior counsel, even one who may have brought the clients into the firm.
When a partner or associate is about to leave a firm, however, it may be argued that he has an obligation to advise a firm client for whom he is working that he is leaving the firm if he believes in good faith that the client’s interests require advance notice of this development. There would *487 obviously be tensions between any such obligation and the traditional fiduciary rules. Those tensions can be minimized by outlawing surreptitious communications with clients by a departing attorney. (See, Johnson, Solicitation of Law Firm Clients by Departing Partners and Associates: Tort, Fiduciary, and Disciplinary Liability, 50 U Pitt L Rev 1, 101-106 [1988].)
Plaintiff presents a mass of evidence concerning the alleged solicitation of HLR clients engaged in by the defendants. Defendants’ response does not offer a wealth of evidentiary detail. Moskovitz and defendant Schiller met with some high officials of the HLR clients and mentioned the planned transfer of loyalty to them. These defendants contend that they, as directors of the HLR clients, owed the clients a fiduciary obligation to advise them of the change that was in the offing. In order to be able fully to evaluate this argument and generally to interpret the meaning of solicitation in this case, I will hold the cross motion in abeyance until further discovery of necessary witnesses takes place.
[Portions of opinion omitted for purposes of publication.]