H. Eugene ANDERSON, Appellee,

v.

ASPELMEIER, FISCH, POWER, WARNER & ENGBERG, Appellant,

and

Kenneth A. Aspelmeier, James F. Fisch, William Scott Power, Robert A. Engberg and Craig D. Warner, Intervenors–Appellants.

No. 89–196.

Supreme Court of Iowa.

Oct. 17, 1990.

Patrick M. Roby and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellants.

Robert Allbee and Steven K. Gaer of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This appeal concerns a contract for the value of a withdrawing partner's interest in a law firm. The law firm challenges a judgment entered in favor of its former partner, claiming the partner's act of withdrawal was detrimental to the firm and justified a forfeiture of his share. Also in dispute is the extent of the withdrawing partner's obligation to contribute to the pension of retired partners. We transferred the case to the court of appeals which, on a divided vote, affirmed the district court by operation of law. We granted further review and now affirm the judgment of the district court.

I.  H. Eugene Anderson graduated from the Iowa College of Law in 1968 and obtained an L.L.M. in taxation from George Washington University in 1972. Shortly thereafter he became associated with, and later a partner of, the Burlington law firm then known as Pryor, Riley, Jones & Walsh. Over the course of the thirteen years that he was with the firm, he built up a very successful tax practice, and traditionally had among the highest billable hours of any of the firm's partners.

Anderson withdrew from the partnership effective February 28, 1985. The partnership conducted a number of meetings to work out the mechanics of Anderson's termination with the firm. Mutual concern was expressed that there be a smooth transition for the sake of the firm's clients. The firm notified 329 of its clients that Anderson intended to leave the partnership; 325 elected to follow him. With respect to associates, Anderson informed his partners that he would not invite any to leave with him without the firm's consent. With full knowledge and consent of the partners, one associate and two secretaries chose to join Anderson.

Although relations were fairly congenial during Anderson's departure, tension later arose over the buy-out price of Anderson's partnership interest. Anderson had acquired a 16.905% interest in the firm. Each percentage point was valued at 1% of 66% of the previous fiscal year's gross income, or $6758. Therefore, Anderson's interest was worth $114,243.99 (16.905 × $6758). Of this amount, $38,743 represented the cash Anderson had actually invested in the firm (his net purchase price) and the remainder signified the growth in the value of his partnership interest.

The 1982 partnership agreement in effect at the time of Anderson's departure provided for a two-tier payment plan. For two years, the firm would make monthly payments to a withdrawing partner for the net purchase price paid, less any debts to previously withdrawn partners (for the purchase of their shares). For the next eight years, the firm obligated itself to monthly payments for the value of the withdrawing partner's interest above the net purchase price. This latter obligation, however, could be reduced (or eliminated entirely) if the remaining partners determined that the withdrawing partner "committed an act which is detrimental to the partnership which affects the value of the remaining partners' interest in the partnership."

Pursuant to the agreement, the firm made twenty-four monthly payments covering Anderson's net purchase price ($1614.53), less money he owed to previous-

ly withdrawn partners ($769.14). Each month the firm also deducted, however, the sum of $526.93 which represented Anderson's share of the firm's monthly pension obligation to two retired partners. Anderson objected that this was not his individual obligation, but belonged to the partnership as a whole.

A further dispute arose when, at the end of the two-year period, the firm informed Anderson that it would not be paying him for the value of his interest beyond the net purchase price on the ground that he had committed acts detrimental to the partnership. The detrimental acts cited were (1) Anderson's continued practice in Burlington in competition with the firm, (2) his taking an associate and two secretaries with him, and (3) the substantial business retained by Anderson and the resulting loss to the firm. The firm also informed Anderson that it expected him to continue making monthly payments toward the pension fund for the remaining lives of the retired partners.

Anderson sued the partnership for his full interest as provided by the partnership agreement. The law firm, now Aspelmeier, Fisch, Power, Warner & Engberg, and its partners as intervenors, filed a counterclaim seeking a declaratory judgment that Anderson had a continuing obligation to pay his share of the monthly retirement payments owed to the two retired partners. Following a bench trial, the court found that the "detriment" clause was tantamount to a covenant not to compete. Short of ruling the clause invalid on ethical grounds, however, the court simply concluded that Anderson had committed no act giving rise to the partnership's right to reduce the buy-out price of his share.

With respect to the retirement obligation, the court held that the plain language of the parties' contract created an obligation for the firm as a whole as opposed to the individual partners. Accordingly, the court awarded Anderson $88,186.71 plus interest. It is from this award that the law firm has appealed.

II. Two questions are posed on appeal: (1) Did the court err by failing to find that the partnership acted within its contractual rights when it restricted Anderson's payout to the net purchase price of his partnership interest? (2) Did the court err by failing to find that the firm had the right under the partnership agreement to deduct Anderson's proportionate share of the retired partners' pension and collect from Anderson future payments toward these benefits?

Resolution of these issues turns on the construction of the partnership agreement, that is, the ascertainment of its "legal effect." *Pathology Consultants v. Gratton,* 343 N.W.2d 428, 433 (Iowa 1984). Neither the trial court nor either party suggests that the relevant provisions of the partnership agreement are ambiguous. When construing a written contract, we are guided by the rule that the intent of the parties controls and, except in cases of ambiguity, intent is determined by what the contract itself says. *Id.* at 433–34; *Fashion Fabrics v. Retail Investors Corp.,* 266 N.W.2d 22, 25 (Iowa 1978); *Allen v. Highway Equip. Co.,* 239 N.W.2d 135, 138–39 (Iowa 1976). Extrinsic evidence may shed light on the intention of the parties but it may not be used to modify, enlarge, or curtail the contract terms. *Hamilton v. Wosepka,* 261 Iowa 299, 306–07, 154 N.W.2d 164, 169 (1967); *Fashion Fabrics,* 266 N.W.2d at 25.

Because this action was tried at law, our review is for the correction of errors at law. Iowa R.App.P. 4. The court's findings of fact are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We view the evidence in the light most favorable to the trial court's judgment. *Hamilton,* 261 Iowa at 304, 154 N.W.2d at 166.

III. Appellants' first argument is two-pronged. First, they contend that the court disregarded substantial proof of financial detriment to the firm caused directly by Anderson's departure. It is true that the firm's earnings dropped markedly in the first fiscal year following Anderson's withdrawal. The trial court acknowledged this downturn. Other persuasive evidence indicated, however, that within three years

after Anderson left the remaining partners enjoyed greater earnings than previously in the history of the firm.

█ At the heart of this controversy is appellants' second contention: that the court rejected the proof of financial loss on the erroneous conclusion that the "detriment" clause is in effect a covenant not to compete. The trial court found that the firm's action toward Anderson was punitive in nature and that any loss it sustained was attributable solely to the clients' election to follow Anderson. Appellants respond by conceding that the detriment clause might serve as a disincentive to withdrawing partners. Appellants insist, however, that neither the contract's terms nor the partners' action betray an intent to restrict Anderson's practice.

The Code of Professional Responsibility clearly prohibits lawyers from using covenants not to compete:

A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.

Iowa Code of Professional Responsibility DR 2–108(A). The rule is regarded as a means of preventing lawyers from "bartering in clients," thereby protecting the client's freedom to choose, discharge, or replace a lawyer at will. *See* R. Hillman, *Law Firm Breakups* 25–26 (1990).

Appellants vigorously contend that the partnership agreement merely enables them to protect the financial integrity of the firm without restricting either Anderson's right to practice or his clients' right to his continued service. We agree that, on its face, the detriment clause may be reasonably so construed. As applied to the facts in this case, however, the clause serves solely to penalize Anderson (and, ultimately, his clients) for exercising an option preserved to him under DR 2–108(A).

The rationale underlying our decision was recently articulated by the New York Court of Appeals in *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 550 N.E.2d 410, 551 N.Y.S.2d 157 (1989). In *Cohen*, a lawyer was denied his departure compensation because he elected to practice law in competition with the firm. *Id.* at 97, 550 N.E.2d at 410, 551 N.Y.S.2d at 157. An intermediate appellate court dismissed Cohen's suit to recover his entitlement, construing the forfeiture clause in the firm's partnership agreement as a "financial disincentive" rather than a restriction on competitive practice. *Id.* at 97, 550 N.E.2d at 411, 551 N.Y.S.2d at 158. Recognizing the transparency of this distinction, the court of appeals reversed the lower court with the following observation:

We hold that while the provision in question does not expressly or completely prohibit a withdrawing partner from engaging in the practice of law, the significant monetary penalty it exacts, if the withdrawing partner practices competitively with the former firm, constitutes an impermissible restriction on the practice of law. The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel.

*Id.* at 98, 550 N.E.2d at 411, 551 N.Y.S.2d at 158.

The same reasoning can be applied to the case before us. In order to reduce Anderson's payout under the contract, the firm must prove that *he* "committed an act ... detrimental to the partnership." It is clear from the record that if Anderson had left the firm, but no clients had followed him, he would have been paid his full share of the financial growth of the partnership during his tenure. Because the firm's clients exercised their choice of counsel, however, Anderson's action has been characterized as detrimental. Noteworthy is the fact that in either event Anderson's action is the same. Thus he has been penalized for the *clients'* response to his withdrawal, a circumstance which does not

justify suspension of the firm's contractual obligation to him, either by its terms or under the canons of professional responsibility.

One commentator has described the shortcoming of an argument like the appellants' this way:

> [It fails] to recognize that an economic incentive for the lawyer may operate to the benefit of the client, and, conversely, an economic disincentive for the lawyer may operate to the detriment of the client. Faced with a choice of taking a share of the firm's profits or some of its clients, a partner may well choose the former if it yields a net economic benefit. In that case, the clients' freedom of choice has been bargained away just as effectively as if the partnership agreement contained a bald restrictive covenant.

R. Hillman, *Law Firm Breakups*, at 32.

In summary, the record before us contains substantial evidence to support the trial court's conclusion that the only act arguably detrimental to the firm was Anderson's withdrawal from it. His freedom to withdraw cannot be abrogated by the monetary penalty the firm has attempted to exact in this case. The trial court committed no error by entering judgment for the firm's full obligation to Anderson under the contract.

■ IV. The partnership agreement in effect when Anderson withdrew was silent with respect to a withdrawing partner's obligation towards the pension fund established for two of the firm's retired partners, J.C. Riley and Elmer Jones. This is in contrast to the 1981 agreement which provided, in pertinent part, that:

> In the event that any of the partners shall voluntarily or involuntarily withdraw from the Firm before retirement, his obligation regarding payment of retirement benefits per Item XI and his obligation to pay a pro rata share of the purchase price of the interest of a partner who has retired before his withdrawal shall both continue to be obligations of the withdrawing partner.

Appellants argue that the spirit of the 1981 agreement should be binding on Anderson despite the intervening contract. Like the district court, we conclude that to impose such an obligation would be contrary to the intent of the partners as demonstrated by the contract and prior conduct of the firm.

Appellants make much of the hearsay testimony by a senior partner that, upon Anderson's admission to the firm, he was told that in exchange for the right to buy into the firm he would assume the obligation at the other end to finance the partners' retirement. Without disputing this contention, Anderson proved that the retirement payment has always been considered a partnership obligation and that no other withdrawing partner (and there have been seven) has been singled out for an individual contribution.

Appellants also contend that the 1982 agreement eliminated the specific reference to this continuing obligation because, as a practical matter, a withdrawing member assumed such an obligation as a matter of law. Appellants make this assertion by reasoning that Anderson's withdrawal effected a dissolution of the partnership and, upon dissolution, the debts of the partnership become the debts of the individual partners. The appellants' position, however, is refuted by the minutes of firm meetings, other terms in the contract, and the law generally applicable to partnership dissolution.

The minutes of the March 16, 1982, meeting of the partnership discloses the following conversation among the partners concerning retirement:

> The feeling was that if a partner retired and the partnership remained intact and was paying the retiring partner's benefits, the partnership shall continue to pay such benefits but that if the partnership did not pay such benefits, said benefits would be the obligation of all partners, including those who had left the partnership previously. The feeling was that this was the law in any event.

Seizing on the phrase "intact" appellants claim that upon Anderson's departure the partnership was no longer "intact" and

hence Anderson's individual obligation was triggered. Identical paragraphs in every partnership agreement both before and after Anderson's departure provide, however, that:

[t]he withdrawal of any partner shall have no effect upon the continuation of the partnership's business for the fiscal year and the partnership as an entity shall continue.

This intention that the partnership remain "intact" despite a withdrawal is consistent with the general rule of partnership law that a dissolution may connote a change in the partnership but does not necessarily cause its termination. *See Medd v. Medd,* 291 N.W.2d 29, 33 (Iowa 1980) (dissolution of a partnership and termination of business operations are entirely separate and distinct concepts).

Moreover, other language in the agreement clearly places the obligation for pension contributions upon the partnership, and not upon former partners. For example, cost of living adjustments obligate a retired party to reimburse "the partnership" for excess payments received, not former partners who may have sustained the fund. Similarly, such adjustments are to be made by agreement of "both parties," that is, the retired partner and the partnership. Failure by *the partnership* to make the required payments for three successive months triggers the retired partner's right to reenter the practice of law without forfeiting any benefits accrued. Appellants can point to no term of the contract which implies an individual, as opposed to a partnership, duty to meet this obligation.

In summary, (1) the partnership remained intact upon Anderson's withdrawal, (2) the firm has always paid the pension contribution out of partnership funds, and (3) the 1982 agreement specifically eliminated any obligation of individual withdrawing partners to continue these contributions. These facts substantially support the trial court's conclusion that the firm was not warranted in offsetting Anderson's partnership share with continuing pension contributions. Nor is there any contractual basis for enforcing such obligation in the future. The judgment of the district court is, accordingly, affirmed.

AFFIRMED.