John V. DONNELLY, Appellant,

v.

BROWN, WINICK, GRAVES, GROSS, BASKERVILLE, SCHOENEBAUM, and WALKER, P.L.C., Appellee.

No. 97–1495.

Supreme Court of Iowa.

Sept. 9, 1999.

James G. Sawtelle and Robert M. Holliday of Sullivan & Ward, P.C., Des Moines, for appellant.

John A. McClintock and Aaron T. Oliver of Hansen, McClintock & Riley, Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, SNELL, TERNUS, and HARRIS,* JJ.

LARSON, Justice.

The plaintiff, John V. Donnelly, brought this declaratory judgment action against his former law firm to establish his right to retirement benefits under a membership agreement. The district court granted summary judgment in favor of the defendant firm, and the plaintiff appealed. We affirm.

## I. *Facts.*

Donnelly has been an attorney in Des Moines since 1965, when he began to work for the predecessor to the defendant firm of Brown, Winick, Graves, Gross, Baskerville, Schoenebaum and Walker, P.L.C. (Brown, Winick). He became a partner in 1968, and when the partnership became a professional limited liability company in 1993, he became a shareholder. In 1994 Donnelly left Brown, Winick and went to another Des Moines firm. The present dispute arises over a 1993 "operating agreement"—specifically a provision for benefits to be paid to a retiring member. Paragraph 8 provides:

> *Retirement of Member by Reason of Death or Legal or Physical Disability or Retirement from Practice of Law.* In the event of the retirement of a general member by reason of death or legal or physical disability or retirement from practice of law either after age 60 with at least 10 years service to the firm, or after at least 25 years of service with the

---

* Senior judge assigned by order pursuant to    Iowa Code section 602.9206 (1999).

firm and its predecessors, regardless of attained age, the following provisions shall apply:

a. *Payment of Capital Account.* [This paragraph provides for payment of a withdrawing member's capital account as shown in the firm's books. The firm has paid Donnelly's share of the account and this issue is not involved on this appeal.]

b. *Continuation Payments.* In addition to the foregoing, the withdrawing member or, in the event of his (her) death before payments are complete, his (her) surviving spouse, or, if there is no surviving spouse or if the surviving spouse later dies, his (her) children under the age of 21 years, shall receive from the firm the amount set forth for each member on Exhibit "A" attached hereto.... The amount set forth on Exhibit "A" shall be paid without interest in 120 equal monthly installments, commencing on the 15th day of the month following the member's death or retirement, as the case may be, provided, however, that in the event of the death of both the withdrawing member and his (her) spouse and when there are no children under the age of 21 of the member before the payments are completed, the payments shall cease even though the full sum shall not have been paid.

Paragraph 8(e) is the focus of this appeal. It provides:

For purposes of this paragraph, "retirement from practice of law" shall mean that a member elects to terminate his (her) private practice of law within the State of Iowa. For purposes of this paragraph, "retirement from practice of law after at least 25 years of service with the firm and its predecessors" shall be applicable when a member has had 25 years or more service with Brown, Winick, Graves, Donnelly, Baskerville, and Schoenebaum, P.L.C., and/or any of the partnerships which preceded this professional limited liability company. The date of each member's commencement of service is set forth on Exhibit "B".

(Emphasis added.) The issue on this appeal is whether the "continuation payments" under the firm's operating agreement qualify as "retirement benefits" under DR 2-108(A).

## II. *Summary Judgment Review.*

We review a summary judgment for correction of errors at law. Iowa R.App. P. 4; *Iowa Tel. Ass'n v. City of Hawarden,* 589 N.W.2d 245, 250 (Iowa 1999). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). The material facts are not disputed in this case, and the parties agree that our role is simply to decide whether the district court correctly applied the law.

## III. *The "Retirement" Benefits.*

Donnelly had been with Brown, Winick for over twenty-five years, and under the membership agreement, that would be sufficient length of service to qualify him for retirement benefits. Brown, Winick rejected his request for them, however, because he was not retired under paragraph 8(e); he had not "terminate[d] his ... private practice of law within the State of Iowa." Donnelly contends such a limitation is a covenant not to compete and thus unenforceable under DR 2-108(A) of our code of professional conduct. Brown, Winick counters that the rule's prohibition does not apply when the restriction on future practice is conditioned on receipt of retirement benefits. The rule, with its exception, states:

A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, *except as a condition to payment of retirement benefits.*

Iowa Code of Prof'l Responsibility DR 2-108(A) (emphasis added). Donnelly rejoins that the exception to the rule requires full retirement before a withdrawing lawyer may be restricted in his future practice. But Brown, Winick's "retirement" provisions do not require full retirement, according to him, because a withdrawing lawyer may enter private practice in another state or enter a nonprivate legal position in Iowa and still draw retirement benefits. Thus, the Brown, Winick plan is not a true retirement plan, and it does not qualify for the exception to DR 2-108(A), Donnelly argues. *See Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg,* 461 N.W.2d 598, 601-02 (Iowa 1990) (firm's refusal to pay withdrawing partner's equity because of his competition with former firm held improper under DR 2-108(A)).

■ We agree with Donnelly that the restriction on Donnelly's future practice is a covenant not to compete within the meaning of DR 2-108(A). But we do not agree with him that the retirement exception to the rule applies only when a firm member fully retires. First, the wording of the exception does not lend itself to that interpretation; it allows a restriction on future practice as a condition of payment of retirement *benefits*—not on the lawyer's full retirement. Second, if the exception applied only when a lawyer completely retires, it would be surplusage because, in the case of a fully retired lawyer, a covenant not to compete would obviously not be necessary. We believe the exception under DR 2-108(A) applies when the parties have agreed, as in this case, to provide retirement benefits under conditions less than full retirement.

■ The exception under DR 2-108(A) applies only if the restriction on future practice is imposed as a condition for receipt of retirement benefits; it does not apply if economic sanctions are imposed under other circumstances. *See, e.g., Anderson,* 461 N.W.2d at 601 (withholding of partner's equity in firm because of competition held impermissible); *Cohen v.*

*Lord, Day & Lord,* 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410 (1989). In *Cohen* a partnership agreement conditioned payment of earned partnership revenues on a withdrawing partner's abstention from the practice of law. The court held the restriction to be unenforceable under DR 2-108(A):

> We hold that while the provision in question does not expressly or completely prohibit a withdrawing partner from engaging in the practice of law, the significant monetary penalty it exacts, if the withdrawing partner practices competitively with the former firm, constitutes an impermissible restriction on the practice of law. The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the clients' choice of counsel.

*Cohen,* 551 N.Y.S.2d 157, 550 N.E.2d at 411. (*Cohen* did not involve the retirement exception to DR 2-108(A).) *See also Pettingell v. Morrison, Mahoney & Miller,* 426 Mass. 253, 687 N.E.2d 1237, 1240 (1997) (restrictions on distribution of capital, based on noncompetition, not allowed). *See generally* Elaine Marie Tomko, Annotation, *Enforceability of Agreement Restricting Right of Attorney to Compete with Former Law Firm,* 28 A.L.R.5th 420, 429–31 (1995).

On the other hand, courts have given effect to restrictive agreements in connection with a member's receipt of retirement benefits. *See id.* at 451-53. In *Graubard Mollen Horowitz Pomeranz & Shapiro v. Moskovitz,* 149 Misc.2d 481, 565 N.Y.S.2d 672, 675-76 (N.Y.Sup.Ct.1990), the court held an agreement providing retirement benefits for departing members as long as they did not "do anything to impair the firm's relationship with its existing clients" was a valid restriction on retirement benefits under DR 2-108(A). An arbitrator's decision approving a Connecticut law

firm's agreement to provide retirement benefits as long as the retiring employee did not practice in certain counties in Connecticut and Florida for three years was affirmed in *Schoonmaker v. Cummings & Lockwood*, No. CV980166247, 1998 WL 928435, at *6 (Conn.Super.Ct. Dec.28, 1998).

In *Neuman v. Akman*, 715 A.2d 127 (D.C.1998), the question was whether a firm violated rule 5.6(a) of the Model Rules of Professional Conduct (the updated version of DR 2-108(A)) [1] when it denied a former partner lifetime benefits payable at age sixty-five because he continued to practice law. The court said:

> We conclude that the limitation [on future practice] falls comfortably within the Rule's exception for "benefits upon retirement" and therefore affirm the grant of summary judgment by the trial court in favor of [the firm].

*Id.* at 128.

In *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 790 P.2d 404 (1990), a partnership agreement denied retirement benefits to attorneys who remain in practice. The court said:

> Although eligible to receive retirement benefits, [the former partner] became entitled to receive them only if he stopped practicing law. *This provision fits squarely within the exception of DR 2-108(A).*

*Id.* at 410 (emphasis added).

We believe the Connecticut Superior Court accurately explained the rationale of the exception to the rule when it observed that

"any construction of the Rule that permits retirement benefits to be conditioned on a noncompete [agreement] will have some effect on client choice.... [W]hile promoting client choice may have been recognized as the primary purpose of the rule, it is not the Rule's only purpose.... [T]here is no doubt that the Rule is designed to permit attorneys to have retirement plans that have noncompetition conditions–there is simply no other explanation for the exception to the Rule."

*Schoonmaker*, 1998 WL 928435, at *5 (quoting arbitrator's award).

Because the exception under DR 2-108(A) applies only to retirement plans, lawyers might attempt to restrict the future practice of their members by phrasing agreements to label a variety of future payments as retirement benefits. A New York case discussed the distinction between receipt of equity shares and retirement benefits in analyzing a law firm's "departure" agreement that the firm claimed was a retirement provision:

> [R]eading the Partnership Agreement as a whole, it is apparent that the [distribution] is not a retirement benefit as that term is used in Code of Professional Responsibility DR 2-108(A). As heretofore stated, the [distribution] constitutes an earned but uncollected sum owed to the [withdrawing partner] during his or her tenure with the firm; it does not represent a future, anticipated distribution in contemplation of retirement.... Contrary to the firm's contention, the mere fact that a [distributee] opts to

1. The Model rules changed the wording of DR 2-108(A) but retained the same general philosophy regarding restrictive agreements. Under rule 5.6,

   [a] lawyer shall not participate in offering or making:

   (a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement....

The comment to the new rule states:

[1] An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer. Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.

leave the firm does not transform his or her interest into a retirement benefit. As noted by the [New York] Court of Appeals, "to treat departure compensation as a retirement benefit would invert the exception into the general rule [as enunciated in Code of Professional Responsibility DR 2-108(A)], thus significantly undermining the prohibition against restraints on lawyers practicing law."

*McDonough v. Bower & Gardner,* 226 A.D.2d 600, 641 N.Y.S.2d 391, 393 (1996) (citations omitted) (quoting *Cohen,* 551 N.Y.S.2d 157, 550 N.E.2d at 410).

Some cases have declined to find payments were true retirement benefits within the meaning of the rule. *See Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston,* 678 So.2d 765, 770 (Ala.1996) (holding agreement awarding departing law partner deferred compensation "in an amount equal to what he would have received had he died at the time of his retirement" if partner refrained from practicing law did not fall within exception to rule 5.6 because deferred compensation was not true retirement benefit); *Spiegel v. Thomas, Mann & Smith, P.C.,* 811 S.W.2d 528, 531 (Tenn. 1991) (holding agreement awarding deferred compensation to departing partners, retiring partners, and partners who worked for the firm in a different capacity, unless the partner who was leaving or changing positions continued to practice law, was not valid under DR 2-108(A) because restriction was not strictly a condition to payment of retirement benefits); *McDonough,* 641 N.Y.S.2d at 392 (holding partnership agreement that paid an amount to partners representing partners' share of excess profits unless partner voluntarily left firm or was discharged for cause was not a retirement benefit under DR 2-108(A) because it was an earned but uncollected amount rather than a future distribution).

■ "Retirement benefits" under DR 2-108(A) must, we believe, be payments pursuant to a bona fide retirement plan. A "retirement plan" is defined as

a systematic arrangement established by an employer for guaranteeing an income to employees upon retirement according to definitely established rules with or without employee contributions but usu. funded.

Webster's Third New Int'l Dictionary 1939 (unabr. ed.1986). The retirement plan in the present case (requiring ten years of service and sixty years of age or twenty-five years of service) clearly qualifies as a retirement plan. Benefits under the plan may, under the exception to DR 2-108(A), be conditioned on Donnelly's remaining out of the private practice of law in Iowa. We affirm on this issue.

### IV. The Claim Under the Iowa Wage Payment Collection Law, Iowa Code Chapter 91A.

■ Donnelly contends that his claim constitutes "wages" under Iowa Code chapter 91A and that Brown, Winick is liable for damages for wrongfully withholding them.

While this issue was raised in Donnelly's petition, it was not addressed by either party in their respective motions for summary judgment or in the court's ruling. Donnelly did not file a motion for enlargement of the ruling under Iowa Rule of Civil Procedure 179(b). *See* Iowa R. Civ. P. 237(c) ("If summary judgment is rendered on the entire case, R.C.P. 179(b) shall apply."). Accordingly, he has waived this issue.

We affirm the ruling of the district court.

**AFFIRMED.**

TERNUS, Justice (concurring specially).

Although I join in the court's opinion, I write separately to explain why I believe the continuation payments qualify as retirement benefits under DR 2-108(A). Preliminarily, I agree with the court's distinction between retirement benefits and

other payments made to departing lawyers that represent their interest in the firm's capital account or in uncollected or undistributed earned income. The latter payments can never qualify as retirement benefits within the meaning of the disciplinary rule. *See Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg*, 461 N.W.2d 598, 601–02 (Iowa 1990). In the present case, there is nothing to suggest that the continuation payments are tied to uncollected fees, undistributed income, or capital investment. Rather, the continuation payments are gratuitous, based only on length of service and age, factors traditionally linked to retirement.

The crux of the plaintiff's argument is that benefits cannot truly be *retirement* benefits if one does not have to fully refrain from gainful employment as a lawyer. In other words, how can benefits be *retirement* benefits when one does not have to quit working to qualify for them? I agree with the District of Columbia Court of Appeals that "the word 'retire' is susceptible to varying meanings depending on the reference to which it is made":

> In one sense, it connotes a permanent withdrawal from gainful employment altogether, namely, "[t]o give up business or public life and live on one's income, savings, or pension." However, "retire" may also refer simply to withdrawal from a particular occupation or even from a particular position within an occupation.
>
> This distinction may be no small matter. If "retirement" denotes simply withdrawal from the firm, then any benefit offered to withdrawing partners may ethically be held contingent upon the partner's refraining from the practice of law. On the other hand, if the word is understood more narrowly to mean, for example, "withdrawal from the practice of law," then only the benefits intended for those who so withdraw may be withheld from a departing partner who continues practicing. Clearly, the broader the scope of the term, the weaker the

prohibition on attorney-practice restraints becomes, and the more likely a particular benefit in question does not contravene the rule.

*Neuman v. Akman*, 715 A.2d 127, 131–32 (D.C.1998) (citations omitted). As the quoted discussion implies, it is not practical to define "retirement benefits" as used in DR 2–108(A) simply in terms of the *extent* of the lawyer's withdrawal from gainful employment because retirement encompasses a broad range of changes in employment. I agree with the majority that, as used in DR 2–108(A), retirement certainly means something less than ceasing to work as a lawyer; otherwise, the exception to the rule prohibiting noncompetition clauses would be unnecessary.

How then does one determine whether a benefit is truly a *retirement* benefit? Robert W. Hillman has a helpful analysis in his treatise, *Hillman on Lawyer Mobility*. Hillman suggests that the applicability of the retirement benefits exception centers on whether the firm's purpose in providing departure payments is in fact to fund its partners' retirement from the practice of law. Robert W. Hillman, *Hillman on Lawyer Mobility* § 2.3.5, at 2:89 (2d ed. Supp.1999). Hillman notes that retirement benefits are provided under firm agreements in recognition of the fact "that some partners, upon reaching a certain age, will cease practicing law and as a result suffer a substantial drop in income." *Id.* at 2:89–90. This situation is to be distinguished from those types of provisions which provide for a method of terminating a partner's interest in unfinished business or settling the account of a withdrawing partner. *Id.* at 2:89.

In distinguishing retirement benefits from other types of departure payments, then, Hillman identifies three criteria that prove helpful in evaluating whether the retirement benefits exception is applicable. *Id.* at 2:90–91. First, and most important, is the existence of minimum age and service requirements. *Id.* A second factor to consider is "the existence of provisions

dealing independently with withdrawal for purposes of retirement and withdrawal for other reasons." *Id.* at 2:91 ("The existence of independent and substantial provisions covering retirement and nonretirement withdrawals ... give[s] credence to the argument that the provisions dealing with retirement ... have been designed for the purpose suggested by their label."). Finally, Hillman asserts that the time period over which the benefits are to be paid is significant in determining their character because "the payment of benefits over an extended period supports the conclusion that the payments are in fact for the purpose of funding a retirement." *Id.*

Turning to the facts before us, I agree with the majority's conclusion that the continuation payments qualify as retirement benefits. First, in order to be eligible for continuation benefits, the attorney has to meet specific age and longevity requirements. Second, the agreement has a specific provision dealing with withdrawal for reasons other than retirement. Third, the payment of the benefits is over an extended period of time–ten years. In addition to the presence of these factors, the firm's operating agreement states that the firm is willing to cooperate with a retired partner to adjust payment of the benefits so as not to adversely affect the retiree's social security benefits. Under the analysis espoused in *Hillman,* these elements of the agreement indicate that the continuation payments were intended to fund a partner's retirement from the practice of law. Therefore, they qualify as retirement benefits within the contemplation of DR 2–108(A).

Once one concludes that the continuation payments are true retirement benefits, it is not necessary to consider the scope of the restriction placed upon the retiring attorney, i.e., whether full retirement is required or whether retirement from the private practice of law in Iowa is sufficient. That is because the exception to DR 2–108(A) allows noncompete restrictions on a lawyer who wants to collect retirement benefits. The breadth of the restriction is not important.