WILLIAM BRUCE HOFF, JR., *et al.*, Plaintiffs-Appellants, v. MAYER, BROWN AND PLATT, Defendant-Appellee.

First District (2nd Division)   No. 1—01—2420

Opinion filed June 4, 2002.

James R. Figliulo and James H. Bowhay, both of Figliulo & Silverman, P.C., of Chicago, for appellants.

William L. Linklater, Anthony G. Stamato, and Carrie J. Di Santo, all of Baker & McKenzie, of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

On August 16, 2000, William Bruce Hoff, Jr. (Hoff), and Catherine Hoff, his wife, filed a complaint for declaratory judgment and other relief in the circuit court of Cook County against Mayer, Brown & Platt (MBP), a Chicago law firm. Thereafter, MBP filed a motion to dismiss plaintiff's complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)). On June 12, 2001, the trial court granted defendant's motion. Hoff now appeals.

Hoff argues on appeal: (1) that the retirement provision in MBP's restated plan is a restrictive covenant and is contrary to Illinois public policy; (2) that the provision is unreasonably broad; and (3) that under any circumstance, Hoff is entitled to a trial on the issues of whether he has materially competed with MBP and whether MBP can reasonably refuse to determine that any alleged damage caused by Hoff has ended.

According to the complaint, Hoff resigned as a partner with MBP on July 9, 1993. At the time of his resignation, Hoff was 60 years old and had been with MBP for 36 years. Hoff requested retirement income from MBP. MBP has refused to pay Hoff retirement income based on its "Restated Partnership Agreement, Retirement, Disability & Death Benefit Program" (Restated Plan or Plan). In his complaint,

Hoff alleges that he should have been receiving in excess of $94,000 per year in retirement income, plus additional cost-of-living adjustments, pursuant to the Plan, since his resignation in 1993. From the record below, there is no dispute that Hoff left MBP to become a founding partner in another Chicago firm—Kasowitz, Hoff, Benson & Torres. Additionally, Hoff received all earned fee income, capital shares, financial benefits and other revenue to which he was entitled, based on his association with MBP and his years of service to the firm. He disputes only MBP's decision to deny him retirement benefits.

■A trial court ruling on a motion to dismiss under section 2—615 interprets all pleadings and supporting documents in the light most favorable to the nonmoving party. *Dial Corp. v. Marine Office of America,* 318 Ill. App. 3d 1056, 1060, 743 N.E.2d 621 (2001). The lower court should grant a motion to dismiss only where it finds that no set of facts would support a cause of action. *Dial Corp.,* 318 Ill. App. 3d at 1060. Because this approach does not require the trial court to weigh facts or determine the credibility of witnesses, the appellate court reviews the matter *de novo. Dial Corp.,* 318 Ill. App. 3d at 1060.

The dispute here centers around sections 3.1 and 3.2 of MBP's Restated Plan, and Rule 5.6 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 5.6). MBP's Restated Plan states:

"3.1 *In General.* If a member's membership in the firm is terminated by reason of his or her retirement on a retirement date (as described in subsection 3.2) on or after January 1, 1987, he or she will be provided with a retirement income in' an amount determined in accordance with the provisions of subsection 3.3.

3.2 *Retirement Date.* The 'retirement date' for a member is the one of the following dates that applies in his or her case:

(a) *Normal Retirement Date.* The 'normal retirement date' for a member shall be the first day of the calendar month as of which he or she elects to retire or is retired by the firm, provided in either event that, as of such day, he or she shall have also either (i) attained at least 65 years of age or (ii) attained at least 62, but not yet attained 65, years of age and completed at least 20 years' [*sic*] associated with the firm.

(b) *Early Retirement Date.* The 'early retirement date' for a member shall be the first day of the calender month as of which he or she elects to retire or is retired by the firm, provided in either event that, as of such day, he or she shall have also attained at least 60, but not yet 62, years of age and completed at least 20 years' [*sic*] associated with the firm.

For purposes of this program, a member shall not be deemed to have elected to retire prior to attaining age 65 unless he or she

substantially ceases the active practice of law on a permanent basis or his or her post-retirement practice of law is determined by the firm to be consistent with his or her status as a retiree."

■ Rule 5.6(a) of the Illinois Rules of Professional Conduct, entitled "Restrictions on Right to Practice," provides: "A lawyer shall not participate in offering or making: (a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement ***." 134 Ill. 2d R. 5.6(a).

Hoff first claims that MBP's Restated Plan is basically a restrictive covenant and is contrary to Illinois public policy. Hoff argues that whether MBP's Plan comports with Rule 5.6(a) depends on whether the "benefits" under the Plan constitute "retirement benefits" under Rule 5.6(a).

Hoff correctly points out in his brief that under Rule 5.6(a), a lawyer may not participate in an agreement that "restricts the rights of a lawyer to practice" after a relationship between the lawyer and firm has ended. 134 Ill. 2d R. 5.6(a). Illinois public policy has consistently discouraged law firm employment agreements that contain noncompetition clauses or restrictive covenants. *Stevens v. Rooks Pitts & Poust*, 289 Ill. App. 3d 991, 998, 682 N.E.2d 1125 (1997). Historically, these provisions have been strictly scrutinized by the courts as they can result in restraints on trade. *Williams & Montgomery, Ltd. v. Stellato*, 195 Ill. App. 3d 544, 553, 552 N.E.2d 1100 (1990). "The rule is designed both to afford clients greater freedom in choosing counsel and to protect lawyers from onerous conditions that would unduly limit their mobility." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 481, 693 N.E.2d 358 (1998). Noncompetition clauses are especially discouraged in the legal profession where the lawyer is not selling or promoting a commodity but rather his or her personal service. Rule 5.6 was also designed to protect lawyers and clients from "illegitimate anti-competitive practices that will distort the market and ultimately drive up the price of legal services." 2 G. Hazard & W. Hodes, The Law of Lawyering § 5.6:101, at 823 (1992 Supp.).

■ Rule 5.6(a), however, provides for an exception to the rule that noncompetition provisions are generally unenforceable. The rule states that an agreement concerning benefits upon retirement is exempt from the general rule. It has been noted that "[t]he purpose and meaning of the exception for 'benefits upon retirement' *** is not crystal clear." 2 G. Hazard & W. Hodes, The Law of Lawyering § 5.6:201, at 824 (1992 Supp.). The Annotated Model Rules of Professional Conduct interprets the retirement benefits exception to mean that

"when a lawyer is retiring or winding up his or her affairs with a firm, the lawyer's receipt of full retirement benefits entails an as-

sumption that he or she is truly retiring from practice. This further suggests that the lawyer may be required to agree to 'stay retired' as a condition of the settlement." Annotated Model Rules of Professional Conduct 466-67 (4th ed. 1999).

We find this interpretation instructive.

The parties have noted, and we agree, that no Illinois case directly addresses this issue. Hoff does, however, draw our attention to Illinois cases that he argues provide guidance. Hoff cites a United States District Court, Northern District, case for the proposition that a broad reading of the retirement benefits exception to Rule 5.6(a) is flawed. Prior to oral argument, Hoff cited *Cummins v. Bickel & Brewer*, No. 00 C 3703 (N.D. Ill. February 6, 2002), as additional authority. Before its summary judgment order of February 6, 2002, the district court filed a motion to dismiss order in *Cummins v. Bickel & Brewer*, No. 00 C 3703 (N.D. Ill. March 1, 2001). In that set of cases, Cummins, a former partner with the law firm of Bickel & Brewer, sued his former firm for refusing to pay him interest in the partnership upon his withdrawal from the firm. The *Cummins* court relied on *Dowd & Dowd, Ltd. Cummins*, slip op. at 4. In *Dowd & Dowd, Ltd.*, the law firm sought relief from the Illinois Supreme Court, contending that the appellate court erred in refusing to uphold the noncompetition clause in its employment contracts. The noncompetition clause in that case stated that an employee of the law firm was prohibited from handling any client of the firm for two years following termination of employment with the firm. The court held that that provision was in direct violation of Rule 5.6 and held it to be unenforceable. *Dowd & Dowd, Ltd.*, 181 Ill. 2d at 480. In *Cummins*, the district court stated that the facts in *Dowd & Dowd, Ltd.* were "almost identical" to the facts in *Cummins. Cummins*, slip op. at 4. We find that the facts in *Dowd & Dowd, Ltd.*, together with the limited precedential value of *Cummins*, make these cases unpersuasive. Because the rules committee found it important to include a specific retirement benefits exception to the noncompetition provisions of law firm agreements, we are obligated to base our decision on the plain language of the rule as it applies to the facts of the matter before us.

Hoff also notes that in *Stevens*, the court found the law firm's employment agreement violative of public policy. The agreement limited compensation payable to any withdrawing partner if the partner competed with the firm in a certain geographical area. The firm unsuccessfully argued that their employment agreement did not violate Rule 5.6 because it merely provided a "modest measure of recoupment to [the firm] for the economic harm caused by the departure and subsequent competition of one of its partners." *Stevens*,

289 Ill. App. 3d at 995. The firm did not argue and the *Stevens* court did not address the retirement benefits exception to Rule 5.6. Therefore, we do not find that the case provides guidance.

As MBP has pointed out in its brief, courts in other states have addressed the public policy considerations of Rule 5.6 and have upheld retirement benefits provisions in law firm employment contracts similar to the one at issue here. In *Neuman v. Akman*, 715 A.2d 127 (D.C. App. 1998), Neuman left his former law firm to engage in private practice and sued his former firm alleging that their partnership agreement violated Rule 5.6(a) of the District of Columbia Rules of Professional Conduct.[1] The agreement provided that a partner leaving the firm would be eligible for capital contributions and a share of the net partnership profits but would be denied an "Additional Amount" linked to the future earnings of the firm if the partner retired and engaged in the private practice of law anywhere in the United States. The trial court held that the "Additional Amount" constituted a retirement benefit and, as such, fit within the exception under Rule 5.6(a). The appellate court affirmed and held that the "Additional Amount comes entirely from firm profits that post-date the withdrawal of the partner. *** It is only future firm revenues that Neuman will be deprived of, and only because he is at least potentially competing with the firm and effecting a depression of those revenues." *Neuman*, 715 A.2d at 136. As we find the facts in *Neuman* to be on point, we are persuaded by that court's reasoning and holding. From the record below, Hoff is requesting that MBP provide him with future firm revenues through his retirement benefits while he competes against MBP in the same city. Like *Neuman*, we find that Rule 5.6(a) was designed specifically to address and correct this situation.

The *Neuman* court notes that the leading case interpreting Rule 5.6(a) or its equivalent is *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 550 N.E.2d 410 (1989). We, too, find this case helpful. In *Cohen*, the New York court held that a law firm partnership agreement which conditioned payment of earned but uncollected partnership revenues upon the withdrawing partner's obligation to refrain from competing with the firm was unenforceable. The court found the provision to be a significant monetary penalty and an impermissible restriction on the practice of law. The *Cohen* court distinguished financial disincentives and penalties from the retirement exception in the applicable rule. Specifically, the court found that retirement benefits are separate and distinct from the financial penalties at issue, otherwise the exception

---

[1]Rule 5.6(a) of the District of Columbia Rules of Professional Conduct is identical to Rule 5.6(a) of the Illinois Rules of Professional Conduct.

would swallow the rule. "[T]o treat departure compensation as a retirement benefit would invert the exception into the general rule, thus significantly undermining the prohibition against restraints on lawyers practicing law." *Cohen*, 75 N.Y.2d at 100, 550 N.E.2d at 412. *Gray v. Martin*, 63 Or. App. 173, 663 P.2d 1285 (1983), cited by both parties here and the *Cohen* court, holds similarly. Like *Cummins*, the *Gray* court held that the law firm partnership agreement which required a forfeiture of financial benefits if the withdrawing attorney practiced law in competition with the firm was in violation of the non-competition clause restrictions found in the professional conduct rules. The provision in the partnership agreement did not discriminate between retiring and withdrawing partners. The *Gray* court noted that, but for the distinction, "[e]very termination of a relationship between law partners would be a retirement, and agreements restricting the right to practice would always be allowed." *Gray*, 63 Or. App. at 179, 663 P.2d at 1290. The provision in the partnership agreement at issue here addresses retirement only. The distinction between this provision and one found in *Cohen*, *Gray* and *Cummins* is important.

MBP also draws our attention to *Donnelly v. Brown, Winick, Graves, Gross, Baskerville, Schoenebaum & Walker, P.L.C.*, 599 N.W.2d 677 (Iowa 1999). In *Donnelly*, the Iowa Supreme Court held that the benefits under the law firm's retirement plan could be conditioned on an attorney remaining out of the practice of law. Donnelly, a partner in Brown, Winick, left the firm after over 25 years of service to join a firm in the same city. Donnelly's length of time with Brown, Winick would have qualified him for retirement benefits under the firm's plan. The firm denied Donnelly retirement benefits arguing that, under the plan, in order to qualify for these benefits, Donnelly would have to "terminate his ... practice of law within the State of Iowa." *Donnelly*, 599 N.W.2d at 679. Donnelly countered by arguing that that provision of the plan was a covenant not to compete and in violation of the Iowa Code of Professional Conduct. *Donnelly*, 599 N.W.2d at 679. Iowa's rule addressing this issue, virtually identical to our Rule 5.6, states that covenants not to compete are a violation of the rule except as a condition of payment of retirement benefits. Reviewing the firm's plan in that case, the court held that "retirement benefits" under the Iowa Code of Professional Conduct were required to be payments pursuant to a *bona fide* retirement plan. The court found that the firm's retirement plan—requiring 10 years of service and 60 years of age or 25 years of service—qualified as a retirement plan and benefits under the firm's plan could be conditioned on Donnelly remaining out of the practice of law in Iowa, pursuant to the exception to the rule. *Donnelly*, 599 N.W.2d at 680. Like *Donnelly*, we find

MBP's retirement plan to be a *bona fide* retirement plan. Additionally, we find MBP's provision comports with Rule 5.6(a), and any retirement benefits offered by MBP may be conditioned upon Hoff remaining out of the practice of law.

■ We recognize the concern that law firms may unfairly take advantage of the exception in Rule 5.6(a). Citing *Cohen* and *Gray*, the Annotated Model Rules of Professional Conduct opines: "in cases when a law firm attempts to categorize a lawyer's departure from the firm as a 'retirement' for purposes of restricting his or her subsequent right to practice law, the courts have rejected such retirement provisions." Annotated Model Rules of Professional Conduct 467 (4th ed. 1999). Here, we do not find MBP's plan characterized Hoff's departure from the firm as a retirement for purposes of restricting his right to practice law. Rather, "retirement" has been defined under the plan for purposes of receiving future benefits. As noted in the model rules, law firms are restricted from using "retirement" for other such purposes. Annotated Model Rules of Professional Conduct 467 (4th ed. 1999). Here, Hoff was 60 years old and had been with MBP for 36 years when he made the decision to resign from the firm and begin a new partnership, and MBP provided Hoff with all fees and benefits due and owing to him at the time of his resignation. MBP denied Hoff only future benefits under the firm's retirement provision. In interpreting the exception to Rule 5.6, the annotated rules explain that receipt of retirement benefits would "entail[ ] an assumption that [a lawyer] is truly retiring from practice *** [and] that a lawyer may be required to agree to 'stay retired' as a condition of the settlement." Annotated Rules of Professional Conduct 466-67 (4th ed. 1999).

The Connecticut Supreme Court addressed the issue of postemployment benefits in *Schoonmaker v. Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 747 A.2d 1017 (2000). In that case, Schoonmaker, a former partner with the defendant law firm, argued that his former firm's decision to withhold compensation upon his departure from the firm and decision to compete was a violation of the public policy embedded in Rule 5.6. The court held that while it agreed that public policy favors a client's access to an attorney of choice:

> "It would be illogical to expect law firms to pay out large sums of cash to departing lawyers while fearing that their cash flow will be threatened by competing lawyers and the loss of potential clients. Implicit in the retirement benefits exception, therefore, is the notion that the public's interest in fostering liberal competition among practitioners must be balanced against a law firm's interest in maintaining a steady income flow for the purpose of providing former members with substantial remuneration upon retirement."
> *Schoonmaker*, 252 Conn. at 440, 747 A.2d at 1031.

In the instant case, we find, reading and interpreting MBP's Restated Plan regarding retirement benefits in light of Rule 5.6(a), the proper balance between the public's interest in choice and a law firm's interest in maintaining income. Keeping in mind the public policy embodied in Rule 5.6, we cannot say that MBP violated this policy by denying Hoff retirement benefits. Hoff relinquished retirement benefits from MBP by resigning from the firm and continuing to practice law.

■ Hoff next argues that the provision in MBP's Restated Plan is unreasonably broad. He argues that the noncompetition provision in the Plan is overbroad in that it is worldwide in its application, is universal in both the nature of the law practice it prohibits and the clients to which it applies, and is unlimited in time. Hoff contends that even assuming the general enforceability of the provision in light of the retirement benefits exception, the provision must still meet a "reasonableness requirement."

Cited by Hoff, the *Williams & Montgomery, Ltd.* court addressed a law firm's strict noncompetition agreement. Here, Hoff seems to draw our attention to the portion of the opinion which addresses whether the defendant acquired any confidential information from his clients and whether that is protected under the firm's noncompetition agreement. *Williams & Montgomery, Ltd.*, 195 Ill. App. 3d at 553-54. We do not find *Williams & Montgomery, Ltd.* instructive or helpful. Hoff has not provided this court with any case addressing an overbroad retirement benefits provision in a law firm employment agreement. Furthermore, we are not persuaded by Hoff's references to cases relied upon by MBP. Hoff notes that many of the cases, cited by both parties, dealt with noncompete clauses and provisions that were limited in time and scope.

In his brief, Hoff states that the "discretion provided to [MBP] in the Restated Plan, in effect, gives the firm the power to control a withdrawing partner's practice of law and the clients' right to choose counsel in violation of the public policy underlying Rule 5.6(a)." We find this to be a vast overstatement. MBP's Plan, in relevant part, states that in the event a partner retires from the firm and chooses to continue to practice law, he or she will be denied retirement benefits. A former partner is free to practice law and clients are not restricted in their choice of counsel. The Plan gives the retiring partner the choice between continuing to practice law and receiving retirement benefits. Because this provision is adequately protected by Rule 5.6(a), we find it does not require restrictive language addressing time, place or scope of future practice. The cases that have specifically addressed the issues of time, place and scope are cases that interpret noncompetition provisions, not provisions addressing retirement benefits. See

*Stevens*, 289 Ill. App. 3d at 998-99. We find that the retirement provision in MBP's Restated Plan is not unreasonably broad.

■ Hoff's final argument is that he is entitled to a trial on the issues of whether he has materially competed with MBP and whether MBP can reasonably refuse to determine that any alleged damage to it caused by Hoff has ended.

First, Hoff asks us to read together sections 3.2 and 7.5(a) of MBP's Restated Plan. As discussed in some detail above, section 3.2 deals with retirement benefits. Section 7.5(a) addresses conditions and limitations relating to retirement benefits. Section 7.5(a) was not argued before the lower court. Nevertheless, Hoff uses this section to present this court with hypothetical circumstances that are meant, we believe, to illustrate how Hoff's practice of law subsequent to his retirement from MBP may constitute a "material competition" with the firm. Hoff suggests that this analysis would be relevant to whether he should receive retirement benefits from his former firm. Hoff cites no case law that addresses this issue. Thus, the issue is waived. Failure to cite relevant authority is in violation of Supreme Court Rule 341 and results in waiver of the issue on appeal. 188 Ill. 2d R. 341(e)(7). *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 468, 758 N.E.2d 442 (2001). Furthermore, we fail to see how this argument is relevant to MBP's denial of Hoff's retirement benefits.

Second, Hoff argues that a trier of fact should determine whether any alleged damage to the firm by Hoff's law practice in the same market as MBP has been cured by time. Again, Hoff cites section 7.5(a) of the Restated Plan. Hoff notes in his brief that under section 7.5(a), a former partner, collecting retirement benefits, may have these benefits suspended in the event the firm determines the former partner is materially competing with MBP. If the prohibited activity of the former partner ends and damage to the firm is cured, the firm may continue retirement benefits to the former partner. On appeal, Hoff argues that he is entitled to a trial on the issue of whether any alleged damage he has caused to the firm has now been cured. Hoff cites no case law to support his contention. As pointed out above, the issue is therefore waived. *Sinclair*, 325 Ill. App. 3d at 468. More importantly, Hoff was never granted retirement benefits in the first place and section 7.5(a) is, therefore, inapplicable to him.

The trial court's granting of MBP's motion to dismiss is affirmed.

Affirmed.

BURKE, P.J., and CAHILL, J., concur.