RICHARD H. PETTINGELL & another[1] *vs.* MORRISON, MAHONEY & MILLER & others.[2]

Suffolk. September 9, 1997. - December 10, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & MARSHALL, JJ.

*Partnership,* Attorneys, Withdrawal of partner. *Supreme Judicial Court,* Practice of law.

A noncompetition provision in a law firm partnership agreement, which imposed on voluntarily withdrawing partners forfeiture of certain benefits if they thereafter competed with the law firm, violated the objective underlying S.J.C. Rule 3:07, Canon 2, DR 2-108(A), 382 Mass. 773 (1981), viz., the encouragement of clients' or potential clients' free choice; this court, however, declined to adopt a per se rule of unenforceability of such forfeiture provisions. [255-258]

In an action challenging the enforceability of a noncompetition provision in a law firm partnership agreement purporting to impose forfeiture of certain accrued benefits on two former partners who had voluntarily withdrawn and who had formed their own partnership, this court declined to give effect to the forfeiture provision where, on the record of summary judgment presented, the law firm demonstrated no harm from the withdrawals that should have been recognized as a reasonable offset against amounts properly due the withdrawing partners. [258-259]

A civil action was remanded for recomputation of the amount payable on the judgment. [259]

CIVIL ACTION commenced in the Superior Court Department on May 24, 1995.

The case was heard by *Margaret R. Hinkle,* J., on motions for summary judgment, and final judgment was entered by *John C. Cratsley,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*James R. DeGiacomo* (*Susan J. Baronoff* with him) for the defendants.

---

[1]Joseph A. Regan.

[2]Individually named partners in the law firm of Morrison, Mahoney & Miller. All defendants will be referred to as the firm.

*Lisa G. Arrowood (Lata Bhopale Williams* with her) for the plaintiffs.

WILKINS, C.J. On August 13, 1993, the plaintiffs, Richard H. Pettingell and Joseph A. Regan, withdrew as partners in the Boston law firm of Morrison, Mahoney & Miller (firm) and formed their own law partnership. In this action they seek the payment of funds that they assert are due to them as partners voluntarily withdrawing pursuant to the firm's partnership agreement. The firm disagrees that the claimed funds are due, citing the partnership agreement provision that, if a partner withdraws from the firm and competes with it, the partner forfeits those funds. The plaintiffs respond that the forfeiture provision of the partnership agreement violates S.J.C. Rule 3:07, Canon 2, DR 2-108 (A), 382 Mass. 773 (1981), and is void as against public policy.

Many facts are undisputed. Pettingell became a firm partner in 1982; Regan became a partner five years later. Each accepted the partnership agreement that was entered into as of January 17, 1989, and was still in effect when the plaintiffs withdrew from the firm. The partnership agreement provides that, except as to what the agreement calls personal clients, if a partner voluntarily withdraws from the firm and "engages in any activities which are in competition with the then current activities of the firm, he shall forfeit all of the benefits" that he would have received if he had voluntarily withdrawn but not competed with the firm.

The benefits at issue consist of two components. The first is the firm's cash profits attributable to the partner in the year of withdrawal, determined at the end of the firm's fiscal year and based on the number of full months that the partner was with the firm in that year and on the partner's established share in the firm's profits. The second is, in the language of the partnership agreement, the total of the partner's "Annual Partnership Interest Credits." The total of a partner's annual partnership interest credits reflects the partner's share of the change in the net worth of the firm determined each year on an accrual basis.[3] Payments of this component are to be made annually in equal instalments over ten years, commencing fifteen months after the partner's withdrawal.

---

[3]The agreement calls for the firm accountant to follow generally accepted accounting principles and, in preparing the annual accrual report, to reflect unbilled time of lawyers in the firm, disbursements paid on behalf of clients, and estimated amounts collectible on subrogation cases.

A judge in the Superior Court considered this case on the plaintiffs' motion for judgment on the pleadings and on the firm's motion for summary judgment, which was supported by an affidavit of one of its partners. She granted summary judgment for the plaintiffs on the ground that the provisions that purport to forfeit the rights of a competing former partner are against public policy and unenforceable. We granted direct appellate review of the firm's appeal from the final judgment. In addition to asserting the enforceability of the forfeiture provisions of the partnership agreement, the firm challenges the propriety of the amounts awarded to the plaintiffs in the final judgment.

Although we reject the adoption of a per se rule against forfeiture provisions, we agree that the judge properly entered judgment for the plaintiffs. The summary judgment record contains no evidence that the plaintiffs' withdrawal harmed the firm in a way that this court should recognize, particularly because of the policy underlying DR 2-108 (A). However, the amounts owed by the parties must be reconsidered. For that reason we vacate the judgment.

Judicial consideration of the enforceability of a forfeiture provision in a partnership agreement has focused on ethical rules concerning restrictions on the rights of a lawyer to practice after withdrawal from a law firm. See, e.g., *Jacob* v. *Norris, McLaughlin & Marcus,* 128 N.J. 10, 17 (1992); *Cohen* v. *Lord, Day & Lord,* 75 N.Y.2d 95, 101 (1989). The rule applicable to this case is DR 2-108 (A) which states that "[a] lawyer shall not be party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits."[4]

The basic concerns of DR 2-108 (A) are the interests of clients, not the interrelationship of the partners and former partners as such. See *Meehan* v. *Shaughnessy,* 404 Mass. 419, 431 (1989). If our only consideration were the lawyers, there would be no apparent reason why this agreement among

---

[4]Substantively this rule is the same as rule 5.6 of the Massachusetts Rules of Professional Conduct, *post* 1301, 1411 (1998), that are effective on January 1, 1998 ("A lawyer shall not participate in offering or making: (1) a partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement . . .").

experienced lawyers should not be enforced. See *Crimmins & Pierce Co.* v. *Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 379 (1933).[5] We generally enforce noncompetition agreements between employers and former employees to the extent they are reasonable. See *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 778 (1974). Cf. *Struck* v. *Plymouth Mtge. Co.*, 414 Mass. 118, 121-122 (1993) (denial of compensation for certain past services when employee competes). In so far as the forfeiture clause violates DR 2-108 (A), all parties participated in the violation by including the offending provision in the partnership agreement. Such a collective violation is not sufficient to preclude enforcement of the forfeiture clause unless there is some policy underlying the violated rule that compels us not to enforce the forfeiture clause in whole or in part. The question comes down to a determination whether there is a policy reason to deny enforcement of the provision in the partnership agreement that imposes adverse consequences on a withdrawing partner who competes but not on a withdrawing partner who does not compete.

The strong majority rule in this country is that a court will not give effect to an agreement that greatly penalizes a lawyer for competing with a former law firm, at least where the benefits that would be forfeited accrued before the lawyer left the firm. See, e.g., *Anderson* v. *Aspelmeier, Fisch, Power, Warner & Engberg*, 461 N.W.2d 598, 601-602 (Iowa 1990); *Jacob* v. *Norris, McLaughlin & Marcus*, *supra* at 25; *Cohen* v. *Lord, Day & Lord*, *supra* at 98, 101; *Spiegel* v. *Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 531 (Tenn. 1991); *Whiteside* v. *Griffis & Griffis, P.C.*, 902 S.W.2d 739, 744 (Tex. Ct. App. 1995). Courts have not been attracted to the contrary view expressed in *Howard* v. *Babcock*, 6 Cal. 4th 409, 425 (1993), that an agreement among partners imposing a reasonable cost on departing partners who compete is not inconsistent with that State's disciplinary rule and is not void on its face. Courts generally view a substantial penalty for competing as a restriction on the right of the withdrawing lawyer to practice, even though the agreement does not explicitly bar the withdrawing lawyer from

---

[5]Pursuant to rule 1.17 of the Massachusetts Rules of Professional Conduct, effective on January 1, 1998, and consistent with the freedom to contract, the parties to the sale of all or part of a law practice may decide the extent to which the seller must agree to cease to practice law. Mass. R. Prof. Conduct rule 1.17 and comment 16.

competing with the former firm. See *Anderson* v. *Aspelmeier, Fisch, Power, Warner & Engberg, supra* at 601; *Jacob* v. *Norris, McLaughlin & Marcus,* 128 N.J. 10, 32 (1992); *Denburg* v. *Parker Chapin Flattau & Klimpl,* 82 N.Y.2d 375, 381 (1993); *Gray* v. *Martin,* 63 Or. App. 173, 181-182 (1983). The concern here is to protect the clients and potential clients of the withdrawing lawyer and the law firm. An enforceable forfeiture-for-competition clause would tend to discourage a lawyer who leaves a firm from competing with it. This in turn would tend to restrict a client or potential client's choice of counsel.

The law should provide the fullest possible freedom of choice to clients. See *Meehan* v. *Shaughnessy,* 404 Mass. 419, 431 (1989). The same principle of public policy is expressed in G. L. c. 112, § 12X, concerning physicians, by making void and unenforceable any restriction on the right of a physician to practice in any geographic area after termination of a professional relationship (but leaving the balance of the agreement enforceable). See *Falmouth Ob-Gyn Assocs., Inc.* v. *Abisla,* 417 Mass. 176, 180 (1994) (obligation to pay $250,000 in liquidated damages for competing restricts right of physician to practice and is unenforceable).

The parties followed the joint notice procedures, prescribed in *Meehan* v. *Shaughnessy, supra* at 437, 442 & n.16, for granting each client an election as to which firm should continue to represent it. The firm argues that this practice sufficiently fulfilled the purpose of client free choice underlying DR 2-108 (A) and, therefore, the forfeiture clause may properly be enforced. The objective of DR 2-108 (A) is to permit a lawyer who leaves a law firm to act for clients of the law firm without being discouraged from doing so by a provision for the forfeiture of funds. A forfeiture provision tends to discourage client free choice by encouraging a lawyer who leaves a firm not to compete. The broad prophylactic object of DR 2-108 (A) is to forbid the inclusion of such a provision in all partnership agreements. The fact that clients in this case may have had free choice of counsel does not justify enforcement of the forfeiture provision.

Disciplinary Rule 2-108 (A) permits a forfeiture if a retired partner competes with the former firm. The amounts to be paid to these plaintiffs are not, however, retirement benefits. The agreement defines retirement as "the complete withdrawal from the practice of law." The plaintiffs are seeking amounts payable

to partners who voluntarily withdraw from the firm. The plaintiffs are not retiring. Indeed that is the whole problem from the firm's point of view. The plaintiffs are practicing law competitively.

The agreement provides that the plaintiffs must forfeit amounts which are based on the firm's increase in net worth and the plaintiffs' share of the profits of the firm in the year of their withdrawal. Without adopting a per se rule, we join with the vast majority of jurisdictions that have generally declined to give effect to forfeiture provisions concerning such accrued amounts. We do so in this case because the firm has not presented evidence in the summary judgment record that the plaintiffs' departures have caused, or have seriously threatened to cause, any harm to the firm or its continuing partners that should be recognized as a reasonable offset against some or all of the amounts due to the plaintiffs. There may be situations in which, although a forfeiture is inappropriate, some reasonable recognition of a law firm's loss due to the departure of a partner should be recognized. A law firm's legitimate interest in its survival and well-being might justify a limitation on payments to a withdrawing partner in particular circumstances (see *Jacob v. Norris, McLaughlin & Marcus,* 128 N.J. 10, 28-29 [1992]), but that limitation would be more difficult to justify if it applied to a withdrawing partner who competes but not to all departing partners. See *Denburg v. Parker Chapin Flattau & Klimpl,* 82 N.Y.2d 375, 381 (1993). A situation warranting an offsetting claim by a firm might arise when a departing partner leaves the surviving partners with onerous partnership debts, threatening the financial integrity of the firm. See *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg,* 461 N.W.2d 598, 601-602 (Iowa 1990). That is not, however, the case before us. The record does not raise a material factual issue concerning the effect on the firm's financial health because of the withdrawal of the plaintiffs.

We see no merit in the firm's claim that the forfeiture clause is not severable from the balance of the agreement. The firm argues that, if the forfeiture clause is not enforced, its financial obligations to the plaintiffs should similarly not be recognized. This argument has been unsuccessful elsewhere. See *Jacob v. Norris, McLaughlin & Marcus, supra* at 33. We see no reason not to enforce the agreement generally but deny enforcement of the offending provision. To do otherwise would result in the

enforcement of the forfeiture and would conflict with the public policy that compels denial of enforcement of that provision.

Finally, we consider the amounts that should be reflected in the judgment to be entered on remand. The parties agree that each plaintiff, at the time of his withdrawal from the firm, had overdrawn his capital account, Pettingell by $116,392 and Regan by $30,316. The parties also agree that the partnership interest credit of each plaintiff, at the time of his withdrawal, was as follows: Pettingell $530,075 and Regan $47,400. The parties do not agree on the plaintiffs' shares of the profits during the year of their withdrawal. The firm submitted two affidavits with different figures. The second affidavit, purporting to correct approximations stated in the first affidavit, was not submitted until after the judge had granted summary judgment to the plaintiffs. The plaintiffs submitted no affidavits on the subject. The proper amounts will have to be determined on remand.

The timing of the obligation to make these various payments should be reflected in the judgment. Partnership interest credits are to be paid in ten equal annual instalments, the first of which is to be paid fifteen months after the partner's withdrawal. The cash profits attributable to a withdrawing partner for the year of his withdrawal are to be paid in three equal annual instalments, the first to be made at the end of the firm's fiscal year next after the year of the partner's withdrawal. These amounts do not bear interest because none is payable on withdrawal of a partner from the firm. Any instalment amounts not paid when payable will bear interest from the dates when they should have been paid.

The partnership agreement is less precise as to the date on which a withdrawing partner must pay the firm the amount of his overdrawn capital account.[6] Certainly when, on August 21, 1995, the firm filed an answer with a counterclaim seeking payment of the negative balances in the capital accounts, with interest, interest at the statutory rate commenced to run on the amount owed from that date. The judgment on remand should recognize interest accordingly.

---

[6]The agreement provides that at the end of each fiscal year a partner should replace withdrawals in excess of his minimum annual drawing account that during the year were temporarily charged to his paid-in capital account. That language suggests that an accounting at the end of the year of withdrawal is called for. It does not appear, however, that the firm followed the described practice.

The judgment is vacated. A new judgment shall be entered providing for the payment of amounts determined according to this opinion. The judgment shall also declare that the non-competition provisions of the Morrison, Mahoney & Miller partnership agreement are not enforceable, in whole or in part, in the circumstances of this case.

*So ordered.*