van Gestel, J.
These matters are before the Court on two motions for summary judgment: (1) the Motion for Summary Judgment of Third-Party Defendant Nixon Peabody LLP and Plaintiffs and Counterclaim Defendants Ronald I. Eisenstein and David S. Resnick; and (2) the Motion for Summary Judgment of Plaintiffs and Counterclaim Defendants Ronald I. Eisenstein and David S. Resnick. The first described motion seeks the dismissal of: (1) the counterclaims asserted against Ronald I. Eisenstein (“Eisenstein”) and David S. Resnick (“Resnick”) by the defendants in case No. 01-2189 BLS; (2) the third-party claims against Nixon Peabody, LLP (“Nixon Peabody”) in case No. 01-2189 BLS; and the complaint in Case No. 01-3774 BLS. The second motion seeks summary judgment on all counts of the complaint in case No. 01-2189 BLS.
BACKGROUND
Eisenstein began working at Dike, Bronstein, Roberts & Cushman, LLP (“DBRC”) as an associate lawyer, and became a partner of the firm on January 1, 1989.
Resnick also began working at DBRC as an associate lawyer, and he became a partner of the firm on January 1, 1995.
Both Eisenstein and Resnick executed amendments to the DBRC partnership agreement which ratified the terms and conditions of the agreement.
Eisenstein and Resnick accepted offers of partnership on January 11, 1999, from Peabody & Brown and withdrew from DBRC on January 31, 1999. Peabody & Brown later merged with Nixon Hargraves to become Nixon Peabody. Eisenstein and Resnick have performed legal work for certain present and former DBRC clients while at Nixon Peabody.
Between January 1, 1998, and January 31, 1999, five out of eleven DBRC partners withdrew from the firm. There is no indication as to where any of these other partners went.
Under the DBRC partnership agreement, a DBRC attorney receives credit for 100% of the billings for work done for clients attributed to him, less expenses, and credit of 90% of billings for work done for clients attributed to other DBRC partners (“non-credited clients”). The other 10% is credited to the DBRC partner to whom the client is attributed.
During the period of Eisenstein’s and Resnick’s partnerships at DBRC, attribution was based upon a partner having initial contact with a client, not whether that attorney continued to bring in new work from that client.
The DBRC partnership agreement, in Paragraph 5A, includes the following with regard to “retired partners”:
Upon any partner’s retirement from the practice of patent, trademark and/or copyright law or death (such partner will hereinafter be referred to as the retired partner) during the term of this agreement or thereafter, this firm, any continuing or succeeding firm which includes any of the remaining partners, or any individual partner practicing alone or with another firm, shall pay to the retired partner or his estate ten and one-half percent (10.5%) of the receipts for services and “mark ups” (hereinafter referred to a Retirement Share) for the retired partner’s clients, as set forth in Exhibit A attached hereto or as amended automatically by this agreement, which are received by this firm or such continuing or succeeding firm or such individual partner or such other firm with which he is practicing, whichever the case may be . . .
The partnership agreement, in Paragraph 5B, addresses the distribution of fees earned by former *154 DBRC attorneys for work performed for non-credited clients post-withdrawal. It reads:
Upon termination of the partnership or withdrawal of a partner, each partner shall for a period of four (4) years from the date of termination or withdrawal, whichever the case may be, pay to the partner (or his estate) who is credited with the client in Appendix A and with whom said each partner is no longer practicing, fifteen percent (15%) of receipts or “mark ups” and services for such client received by said each partner or any other firm with which he is practicing or of which he is a partner . . .
On January 1, 1996, Sewall P. Bronstein, P.C. (“Bronstein, P.C.”) became “of counsel” to DBRC by entering into an “Of Counsel Agreement” with the partnership. Eisenstein and Resnick were still partners of DBRC at this time. The Of Counsel Agreement, at Paragraph 8 provides, in part:
The benefits provided to a retired partner in Paragraph 5A of the Partnership Agreement of May 1, 1978, as currently amended (Partnership Agreement) and as applied to [Bronstein, P.C.] shall be held in abeyance until the termination of this Agreement, whereupon [Bronstein, P.C.) will be entitled to such benefits as though [Bronstein, P.C.] had retired on the day after the last day of this Agreement.
Payment is owed only if clients follow a withdrawing partner to his new firm. There is no obligation to pay if the client leaves after a withdrawing partner leaves but does not follow the withdrawing partner to his new firm.
In early 2000, a representative of Edwards & Angelí approached DBRC through David Conlin to inquire whether a merger of the firms would be mutually' beneficial. At the time, DBRC was not actively looking for a merger partner. DBRC had, however, been contacted by other firms seeking to merge with it.
On June 20, 2000, DBRC ceased to be actively engaged in the practice of law and the partners of DBRC became partners in Edwards & Angelí, LLP. The associates and other employees of DBRC became Edwards & Angelí employees on that date as well.
The DBRC parties believe that they are entitled to payments pursuant to Paragraph 5B for work done by Nixon Peabody lawyers for former DBRC clients even if attorneys at Edwards & Angelí continue to do work for those same clients within the four-year period set forth in Paragraph 5B.
Among the damages that DBRC seeks to recover are payments under Paragraphs 5A and 5B of the partnership agreement for services performed for former DBRC clients by Eisenstein and Resnick for a period of four years commencing on February 1, 1999, the date they began working for Nixon Peabody. They also seek recovery based upon “losses incurred by DBRC as a result of Eisenstein’s and Resnick’s refusal to honor their obligations . . . calculated on the basis of payments that have been or may be made by Dike Bronstein to its partners, former partners or retired former partners in fulfillment of obligations owed but unpaid by Eisenstein and Resnick.”
DBRC produced a document, referred to as a distribution reconciliation, which shows that, as of the end of 2001, Eisenstein and Resnick were owed $185,171 and $39,813 respectively under Paragraph 5E of the partnership agreement.
DBRC suspended payments to Eisenstein and Resnick after it received notice that they viewed the provisions of Paragraphs 5A and 5B of the partnership agreement as unenforceable.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact and the moving pariy is entitled to judgment as a matter of law. Lindsay v. Romano, 427 Mass. 771, 773 (1998); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving pariy bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, Eisenstein, Resnick and Nixon Peabody are the moving parties and must carry the burdens.
A major issue in both cases will turn on whether the provisions in Paragraphs 5A and 5B of the DBRC partnership agreement are valid.
Paragraph 5A, for present purposes, is focused solely on the status of Bronstein, P.C. and its sole employee, Sewall P. Bronstein. On the record before the Court, on facts not in dispute, did Bronstein, P.C. retire from the practice of patent, trademark and/or copyright law?
On January 1, 1996, Bronstein, P.C. became “of counsel” to DBRC and entered into the “Of Counsel Agreement” with DBRC. By the Of Counsel Agreement, at Paragraph 8, the benefits provided to a retired partner in Paragraph 5A of the DBRC Partnership Agreement as applied to Bronstein, P.C. “shall be held in abeyance until the termination of [the Of Counsel] Agreement, whereupon [Bronstein, P.C.] will be entitled to such benefits as though [Bronstein, P.C.] had retired on the day after the last day of this Agreement.”
In the opposition briefbut nowhere else insofar as this Court can seeit is stated that Bronstein, P.C. totally retired from the practice of law in November 1999. This was several months after Eisenstein and Resnick withdrew from DBRC. The factual record is unclear as to whether or when the Of Counsel Agreement came to its last day. It therefore remains unclear as to whether or when Bronstein, P.C. became a “retired partner.”
*155 With regard to Paragraphs 5A and 5B, the motions here also are grounded on the contention that they are unenforceable because they violate Rule 5.6 of the Massachusetts Rules of Professional Conduct. This Rule provides that:
A lawyer shall not participate in offering or making:
(a) a partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) an agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a controversy.
The law that dominates the resolution of Paragraphs 5A and 5B is found in Pettingell v. Morrison, Mahoney & Miller, 426 Mass. 253 (1997). In Pettingell, the Supreme Judicial Court clarified the law in Massachusetts under its former Rule DR 2-108(A) and, in footnote 4 at page 255, noted that substantively DR 2-108(A) is the same as Rule 5.6 of the Massachusetts Rules of Professional Conduct that became effective on January 1, 1998. Then at page 257, the SJC said:
The objective of DR 2-108(A) is to permit a lawyer who leaves a law firm to act for clients of the law firm without being discouraged from doing so by a provision for the forfeiture of funds. A forfeiture provision tends to discourage client free choice by encouraging a lawyer who leaves a firm not to compete. The broad prophylactic object of DR 2-108(A) is to forbid the inclusion of such a provision in all partnership agreements.
The SJC then went on to say, at page 258:
Without adopting a per se rule, we join with the vast majority of jurisdictions that have generally declined to give effect to forfeiture provisions ... There may be situations in which, although a forfeiture provision is inappropriate, some reasonable recognition of a law firm’s loss due to the departure of a partner should be recognized. A law firm’s legitimate interest in its survival and well-being mightjustify a limitation on payments to a withdrawing partner in particular circumstances . . . but that limitation would be more difficult to justify if it applied to a withdrawing partner who competes but not to all departing partners ... A situation warranting an offsetting claim by a firm might arise when a departing partner leaves the surviving partners with onerous partnership debts, threatening the financial integrity of the firm.
(Emphasis added.)
What the SJC has said is that forfeiture agreements are generally unenforceable; however, they might survive under certain situations involving the legitimate interests of the firm in its economic survival.
The Pettingell court made absolutely clear that the “basic concerns of [Rule 5.6] are the interests of clients, not the interrelationship of the partners and former partners as such.” Id. at 255. “The strong public interest in allowing clients to retain counsel of their choice outweighs any professional benefits derived from a restrictive covenant.” Meehan v. Shaughnessy; Cohen, 404 Mass. 419, 431 (1989).
The concern here is to protect the clients and potential clients of the withdrawing lawyer and the law firm. An enforceable forfeiture-for-competition clause would tend to discourage a lawyer who leaves a firm from competing with it. This in turn would tend to restrict a client or potential client’s choice of counsel.
Pettingell supra, 426 Mass. at 257.
Rule 5.6 does permit an agreement that restricts the right of a lawyer to practice after termination of the relationship, concerning benefits upon retirement. But neither Eisenstein nor Resnick are retired or receiving retirement benefits from DBRC. DBRC and Bronstein, P.C.:
are seeking amounts payable to partners who voluntarily [withdrew] from the firm. The plaintiffs are not [retired]. Indeed that is the whole problem from the firm’s point of view. The plaintiffs are practicing law competitively.
Pettingell supra, 426 Mass. at 257-58.
Under Pettingell DBRC must have “presented evidence in the summary judgment record that the plaintiffs’ departures have caused, or have seriously threatened to cause, any harm to the firm or its continuing partners that should be recognized as a reasonable offset against some or all of the amounts due to the plaintiffs.” Id. at 258. But such a limitation is “more difficult to justify if it applied to a withdrawing partner who competes but not to all departing partners.” Id. The DBRC partnership agreement does precisely what the SJC frowned upon; it applies only to partners who withdraw and then compete by representing former DBRC clients.
On the point of whether Eisenstein’s and/or Resnick’s leaving DBRC in January 1999, seriously caused harm to the firm or its continuing partners, the continuing partners’ Federal Income Tax Schedule K-ls (IRS Forms 1065) are revealing. For tax year 1999the year that Eisenstein and Resnick left in Januaiythe five continuing partners’ combined income dropped $130,008 on a gross of approximately $1.2 million. Then, in the following tax year, 2000, the same five continuing partners’ combined income from DBRC rose dramatically to $2.3 million, representing a $1.1 million gain.[4] This demonstrates quite the contrary from what the SJC had in mind as seriously caused economic harm.
Respectfully, this Court does not find convincing the February 28, 1994 opinion of the Massachusetts Bar Association’s Committee on Professional Ethics that effectively makes the propriety of forfeiture pro *156 visions like those in play here dependent upon the percentage of the fee in setting the payment called for. There, the MBA Committee, assaying the very provisions in issue here, had no trouble with a 10.5% payment, but found a 15% payment “closer to the line.” Where the line ought to be drawn is not at the point that the withdrawn lawyer cries “uncle” and will not take on a client’s representation. Any amount that gives the lawyer pause is too much. Thus, to this Court abrightline test seems more consonant with the SJC’s repeated commands that Rule 5.6 and its predecessor exist for the benefit of clients, not that of the squabbling lawyers. No payment for the privilege of serving a client ought to be permitted.
In this Court’s view neither Paragraph 5A nor 5B is enforceable. This determination dictates the results in both cases.
ORDER
For the foregoing reasons, the Motion for Summary Judgment of Third-Party Defendant Nixon Peabody, LLP and Plaintiffs and Counterclaim Defendants Ronald I. Eisenstein and David S. Resnick (Paper #31) is ALLOWED; and the Motion for Summary Judgment of Plaintiffs and Counterclaim Defendants Ronald I. Eisenstein and David S. Resnick (Paper #32) is ALLOWED.
Final judgment shall enter dismissing: (1) the counterclaims asserted against Ronald I. Eisenstein and David S. Resnick by the defendants in case No. 01-2189 BLS; (2) the third-party claims against Nixon Peabody, LLP in case No. 01-2189 BLS; and (3) the complaint in Case No. 01-3774 BLS. Additionally, final judgment shall enter on all counts of the complaint in case No. 01-2189 BLS in favor of Ronald I. Eisenstein in the amount of $185,171 and in favor of David S. Resnick in the amount of $39,813, together with costs and statutory interest from December 31, 2001.

 This also was the year in which DBRC, on June 20, 2000, ceased to be actively engaged in the practice of law and its partners became partners in Edwards & Angelí. Significantly, it is only the DBRC K-ls that the Court reports on here. Whatever income the partners had from the six months of their partnership at Edwards & Angelí is not included.

 David S. Resnick, Nixon Peabody, LLP and John Doe.