van Gestel, J.
This matter comes before the Court on a motion by the plaintiff, Lampert, Hausler & Rodman, P.C. (“LH&R”), seeking partial summary judgment on the issue of liability alone against the defendant John F. Gallant (“Gallant”) on Count II of the complaint and on Count I of the third-party counterclaim. Count II claims a breach of fiduciary duty by Gallant to LH&R and Count I claims a breach of fiduciary duty by LH&R to Gallant.

BACKGROUND

Former partners/shareholders in a law firm, are locked in a professionally ugly battle over which lawyers get how much in fees from matters incomplete at the time of a split-up. Of greatest concern to LH&R are certain unfinished contingent fee cases that followed Gallant and the other defendant as departing lawyers.
As this Court noted when responding to an earlier motion, the uncertainty as to who gets what is of the parties’ own making. They chose to establish a law firm — then named Gallant, Hausler & Lampert, P.C.— as aprofessional corporation pursuant to G.L.c. 156A. However, they never expended the effort to create a written agreement addressing the division of unfinished business or the dissolution of the firm. Thus, when Gallant, a shareholder in Gallant, Hausler & Lampert, P.C., “resigned” and certain clients followed him to his new firm, the question of allocation of fees and disbursements gave birth to this lawsuit.
Now, LH&R, seizing upon the close corporation status of the professional corporation, presses Gallant, who is still a shareholder, to abide by his fiduciary duties. For Gallant, who established his new firm, and is practicing law in the same town as LH&R, this is difficult because his mere competition is being held out as a breach.
Again, as this Court observed before, Gallant, Hausler & Lampert, P.C., now LH&R, had, and apparently still has: three shareholders, including Gallant; illiquid stock that cannot readily be sold; and day-today management that consists of a significant number of shareholders. Gallant, Hausler & Lampert, P.C. is, therefore, for these purposes, clearly a closely held corporation. Donahue v. Rodd Electrotype Co. of New *615 England, Inc., 367 Mass. 578, 586 (1975). See also Demoulas v. Demoulas Supermarkets, Inc., 424 Mass. 501, 528-29 (1997). Consequently, the shareholders each have some significant degree of fiduciary duties to one another just like partners in a traditional partnership.
The fiduciary duties of lawyers in a partnership to their former law firm with regard to alleged improper solicitation of clients are well established in Massachusetts. See, e.g., Meehan v. Shauhnessy; Cohen, 404 Mass. 419, 433-38 (1989). That Gallant, Hausler & Lampert, P.C. is a closely held professional corporation in the practice of law does not diminish those fiduciary duties. However, other factors may have an effect thereon.
Also earlier, when LH&R lamented that following Massachusetts law will result in placing clients in the awkward and uncomfortable position of having to take a stand in the midst of an unseemly clash among their present and former lawyers over fees that the clients have paid or will have to pay, this Court stated that sheltering the clients from this burden must come from the lawyers acting professionally, not by a trial judge overlooking law recently expressed by the Supreme Judicial Court.

DISCUSSION

Given that LH&R is a law firm, Rule 5.6 of the Massachusetts Rules of Professional Conduct, found in SJC Rule 3:07, must be given recognition. In significant part, this Rule provides that:
A lawyer shall not participate in offering or making:
(b) an agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a controversy.
Pettingell v. Morrison, Mahoney & Miller, 426 Mass. 253 (1997), provides guidance here. In Pettingell the Supreme Judicial Court clarified the law in Massachusetts under its former Rule DR 2-108(A) and, in footnote 4 at page 255, noted that substantively DR 2-108(A) is the same as Rule 5.6 of the Massachusetts Rules of Professional Conduct that became effective on Januaiy 1, 1998. Then, at page 257, the SJC said:
The objective of DR 2-108(A) is to permit a lawyer who leaves a law firm to act for clients of the law firm without being discouraged from doing so by a provision for the forfeiture of funds. A forfeiture provision tends to discourage client free choice by encouraging a lawyer who leaves a firm not to compete. The broad prophylactic object of DR 2-108(A) is to forbid the inclusion of such a provision in all partnership agreements.
The SJC went on to say, at page 258:
Without adopting a per se rule, we join with the vast majority of jurisdictions that have generally declined to give effect to forfeiture provisions There may be situations in which, although a forfeiture provision is inappropriate, some reasonable recognition of a law firm’s loss due to the departure of a partner should be recognized. A law firm’s legitimate interest in its survival and well-being might justify a limitation on payments to a withdrawing partner in particular circumstances . . . but that limitation would be more difficult to justify if it applied to a withdrawing partner who competes but not to all departing partners ... A situation warranting an offsetting claim by a firm might arise when a departing partner leaves the surviving partners with onerous partnership debts, threatening the financial integrity of the firm.
There are no special interests in LH&R’s survival brought to the attention of this Court.
“The concern [in Rule 5.6] is to protect the clients and potential clients of the withdrawing lawyer and the law firm.” Id. at 257.
The Pettingell court made absolutely clear that the “basic concerns of [Rule 5.6] are the interests of clients, not the interrelationship of the partners and former partners as such.” Id. at 255. “The strong public interest in allowing clients to retain counsel of their choice outweighs any professional benefits derived from a restrictive covenant.” Meehan, supra, 404 Mass. at 431.
Rule 5.6 does not permit the enforcement of a “fiduciary duty” that restricts the right of a lawyer to practice after termination of the relationship. But here, of course, it is argued that the relationship has not terminated because of Gallant’s continuing position as a shareholder in LH&R. Indeed, Gallant himself enforces that argument by pressing with vigor his own alleged right to have the other shareholders of LH&R extend ongoing fiduciary duties to him.
This Court was told not to carve out, just for lawyers, a special exclusion to the fiduciary duties of shareholders in a closely held corporation. Indeed, the argument went, lawyers, more than all other kinds of shareholders, are fully equipped to understand the obligations that they have assumed when they choose to conduct their practice in the form of a professional corporation.
But, this Court is not free, nor should it be, to overlook the Rules of Professional Conduct or the teachings in Pettingell and Meehan.[2] To do otherwise abandons the very persons that the SJC says must be protected — clients and potential clients.
Again Pettingell provides some guidance. There the SJC was addressing a forfeiture clause in a written partnership agreement that would restrict the rights of lawyers to practice after withdrawal from a law firm. Among other things, the law firm argued that the forfeiture clause was not severable from the balance of the agreement. The SJC saw “no merit” in this claim. Pettingell, supra, 426 Mass. at 258. The firm further contended that “if the forfeiture clause is not enforced, *616 its financial obligations to the (departing lawyers] should similarly not be recognized.” Id. Noting that that argument had been unsuccessful elsewhere, see e.g., Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 33 (1992), the SJC said:
We see no reason not to enforce the agreement generally but deny enforcement of the offending provision. To do otherwise would result in the enforcement of the forfeiture and would conflict with the public policy that compels denial of the enforcement of that provision.
Id. at 258-59. In short, the constraint of the disciplinary rules trumps what otherwise would be a valid provision in a contract.
This Court sees no compelling reason why it should not apply a similar approach to the present situation. Thus, it sees no basis not to enforce the fiduciary duties between and among the shareholders of LH&R generally but to deny enforcement of so much thereof as would prohibit Gallant — or Lampert or Hausler— from practicing law. To do otherwise would result in the enforcement of a condition contrary to Rule 5.6 of the Rules of Professional Conduct as interpreted in Pettingell and Meehan and would conflict with the public policy that compels denial of the enforcement of that kind of condition for the good of clients and potential clients.
The Court also reminds the parties that “(s]ummary judgment, when appropriate, maybe rendered against the moving party.” Mass.R.Civ.P. Rule 56(c).

ORDER

For the foregoing reasons, the plaintiffs motion for partial summary judgment on issues of liability only with respect to Count II of the complaint and Count I of the third-party counterclaim is ALLOWED with respect to all breaches of those fiduciary duties owed by John F. Gallant to the plaintiff and with respect to all breaches of those fiduciary duties owed by Alan G. Lampert and Douglas E. Hausler to John F. Gallant, except insofar as any such fiduciary duties may otherwise prohibit John F. Gallant, Alan G. Lampert or Douglas E. Hausler from practicing law in, or not within, the law firm formerly known as Gallant, Lampert & Hausler, P.C.

 Additionally, a professional corporation organized to practice law is among the kinds of limited liability entities specifically regulated by SJC Rule 3:06.